511 S.E.2d 848

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Sammy Lee DAVIS, Sr., Defendant Below, Appellant.**

No. 25175.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.

Decided Dec. 11, 1998.

---

Jeffrey A. Elder, Parkersburg, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

The appellant in this proceeding, Sammy Lee Davis, Sr., was convicted of first degree murder and certain other crimes. He was sentenced to life in the penitentiary with a recommendation of mercy. On appeal, he claims that the trial court erred by introducing into evidence hearsay statements made by two alleged accomplices. He also claims that the evidence introduced was insufficient to support the verdicts against him and that the trial court erred in refusing to grant him a change of venue.

### FACTUAL BACKGROUND

On February 1, 1996, two individuals who were chopping firewood in rural Wirt County, West Virginia, discovered the body of Rhoda Snyder, the appellant's girlfriend. Ms. Snyder had been strangled with a bra and had been stabbed. Her clothing was located near her body. Her panties and a tennis shoe were stuffed into her pants.

The police, in investigating the case, were careful not to reveal the details of the discovery, so the fact that Ms. Snyder had been strangled with a bra, or had been stabbed, or that her clothing was assembled as it was, reasonably should not have been known to anyone who had not seen the body. In the course of their investigation, the police interviewed two individuals, Sammy Lee Davis, II and James William Tanner, who eventually gave statements implicating the appellant in the murder. The statement of Sammy Lee Davis, II indicated that the appellant had sexually assaulted Rhoda Snyder and that he had killed her after she had threatened to report the assault to the police. The statements of James William Tanner indicated that although he had no involvement with the sexual assault or the murder, he did aid in disposing of the body after the murder had occurred. Both Sammy Lee Davis, II and James William Tanner were aware of many of the details which the police had kept from public knowledge. The appellant, Sammy Lee Davis, II and James William Tanner were subsequently indicted for the murder of Rhoda Snyder.

On December 9, 1996, prior to trial, the State of West Virginia filed a notice of intent to use as evidence the statements given by Sammy Lee Davis, II and James William Tanner. The State indicated that although the statements contained hearsay, they were, in the State's view, admissible under the

penal interest exception to the hearsay rule set forth in Rule 804(b)(3) of the West Virginia Rules of Evidence. During a hearing conducted on January 13, 1997, defense counsel specifically indicated that he had no objection to the admission of the Tanner statements. He stated: "And I want to put on the record while the defendant is present . . . that our decision to not oppose the State's use of the Tanner statement of March 20th is a strategic decision that we have made, which we think is for the defendant's benefit. . . ." The judge, at this point, said that he wanted to clarify the statement or statements to which the defense did not object. Defense counsel indicated that: "We're not contesting these statements in any way." The court engaged in a colloquy with the defendant about the evidence. The defendant indicated that he understood what he was doing and did not want to object to the admission of the evidence. At the conclusion of the hearing the court ruled that the statements would be admissible in evidence. The court also addressed the admissibility of the statements of Sammy Lee Davis, II. The following transpired:

THE COURT: You're not contesting the admissibility of any of those statements?

MR. KIGER [Defense Counsel]: No, Your Honor. We think it helps us.

During the appellant's subsequent trial, the State introduced evidence related to the discovery of Rhoda Snyder's body and autopsy evidence which indicated that semen had been found in her body but that the DNA in the semen did not match that of the appellant or Sammy Lee Davis, II or James William Tanner. The State also introduced the statements given by Sammy Lee Davis, II and James William Tanner. The appellant again affirmatively stated that he did not object to the admission of the statements. Neither Davis nor Tanner testified at the trial. The defendant himself testified and denied committing the murder.

At the conclusion of the trial, the jury found the defendant guilty of murder and of the other charges for which he was subsequently sentenced. In the present appeal, the appellant claims that the trial court erred in admitting the statements of Sammy Lee Davis, II and James William Tanner. He also claims that the evidence adduced did not support the verdict returned by the jury and that the trial court erred in refusing to grant him a change of venue.

## STANDARD OF REVIEW

We have recognized that a trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are reviewed for an abuse of discretion. *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996). In reviewing the question of whether the evidence supports the jury's verdict in a criminal case, it is incumbent upon this Court to review that evidence in the light most favorable to the defendant and to reverse the jury's verdict only if it is insufficient to convince a rational trier of fact that the elements of the crime were not proven beyond a reasonable doubt. *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Lastly, a change of venue question should be reviewed under an abuse of discretion standard. *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

## DISCUSSION

As previously indicated, the appellant in the present proceeding claims that the circuit court committed error by admitting into evidence the statements made by the codefendants, Sammy Lee Davis, II and James William Tanner. He specifically claims that these statements, which were hearsay statements, were admitted by the circuit court without its consideration of their admissibility under the requirements of Rule 804(b)(3) of the West Virginia Rules of Evidence. He also claims that the circuit court failed to determine the admissibility of the statements under the confrontation clause of the Sixth Amendment of the United States Constitution. Implicit in his contentions is the position that the error in admitting the statement was "plain error" not affected by his failure to object to them.

Recently, in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court addressed the effect of an attorney for a criminal defen-

dant specifically waiving objections [1] to a trial event which, as in this case, might be considered to be plain error. The Court stated that there is a distinction between the waiver of error and the simple failure to object to it. In *Miller*, we noted that the Supreme Court of the United States defined plain error in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The Court then went on to state that:

> In *Olano*, the Supreme Court set forth, in comprehensive fashion, the appropriate analytical model for dealing with errors that were not brought to the attention of the trial court at the time and in the manner required by the applicable rules of procedure. The Supreme Court began its analysis by recognizing that Rule 52(b) of the Federal Rules of Criminal Procedure contemplates a single category of error that may be notice—plain error that affects the substantial rights of a defendant. The Supreme Court continued by stating the first inquiry under the rule is whether there has in fact been error at all. The Supreme Court said deviation from a rule of law is error unless there is a waiver. Waiver, the Supreme Court emphasized, is the "'intentional relinquishment or abandonment of a known right.'" 507 U.S. at 733, 113 S.Ct. at 1777, 123 L.Ed.2d at 519, *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). As noted in *United States v. Lakich*, 23 F.3d 1203, 1207 (7th Cir.1994), when there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law need not be determined.

*State v. Miller, supra* at 18, 459 S.E.2d at 129.

■ In Syllabus Point 8 of *State v. Miller, supra*, this Court summarized its conclusions as follows:

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a

known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

■ The appellant's attorney in the present case specifically stated to the trial court that he did not wish to object to the admission of the hearsay statements which have now been challenged by the appellant. To the contrary, he indicated that, for tactical reasons, he considered the admission of the statements at trial to be desirable.

■ As stated in *State v. Miller, id.*, when there has been a knowing and intentional relinquishment or abandonment of a known right at trial, even in what otherwise would be a plain error situation, inquiry as to the effect of a deviation from a rule of law need not be determined on appeal. In effect, the Court held that where such a waiver has occurred, the error or the event giving rise to an alleged error cannot serve as the basis for the reversal of a conviction. In light of this, this Court believes that the appellant's present challenge to the hearsay statements is without merit.

Another error assigned by the appellant is that the trial court erred in failing to grant him a new trial based upon insufficient evidence. In arguing this point, the appellant essentially asserts that, while the evidence in the case shows that Rhoda Snyder was killed by strangulation, there is no credible evidence that he was the perpetrator of the crime.

■ Recently, in *State v. Guthrie, supra*, this Court discussed what an appellate court should consider in determining whether the evidence in a case supported a jury's verdict. In Syllabus Point 1 of *State v. Guthrie, supra*, the Court stated:

1. Not only did the appellant not object to the introduction of these statements, but his attorney explicitly stated that he was not going to object for strategic reasons.

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

■ Elsewhere, in *State v. Guthrie, id.*, the Court indicated that a jury verdict should be set aside only when the record contains no evidence, regardless how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

■ The record in the case presently under consideration indicates that, when the body of the victim was discovered, the investigating officers noted certain facts which were not disclosed to the public and which reasonably would not have been known by any person who had not seen the body or who was not directly involved with the commission of the crime. For instance, the police officers determined that the victim had been strangled with her bra, that her panties were inside her pants, and that a tennis shoe was inside her pants. Police officers also learned that, in addition to the strangulation marks, the victim had stab wounds.

In the course of their investigation, the police officers obtained a statement from the appellant's son, Sammy Lee Davis, II which directly implicated the appellant in the commission of the crime. Additionally, James William Tanner indicated that he had helped dispose of the body though he denied participating in the actual commission of the homicide. Both of these individuals were aware of certain facts discovered by the police which had not been made public and which would have been known only by a person or persons closely associated with the murder or the body. One of the individuals, James William Tanner, when asked to show where the body was disposed, stated that he would be happy to do so and directed the police officers to where the body had been found.

Additionally, Tanner indicated that a sheet that had been used to wrap the victim's body had been disposed of in a certain place. On the basis of his description of where the sheet was located, a State Trooper found the sheet on the northeast side of East Summersville Road in a ditch approximately one-half mile from where the victim's body was discovered.

Another witness was Linda Gibson who lived in an apartment over the appellant and the victim. Ms. Gibson testified that either at the end of January or the beginning of February, 1996, she heard an argument; but, she could not identify the voices of the individuals who were arguing. Later the morning of the same day or early the next morning, she was awakened by a car driving up to the premises. A short time later, she observed the appellant, James William Tanner, and a third individual putting something in the rear of the vehicle which appeared to be a body wrapped in a sheet. After the vehicle left, she never again saw the victim.

The defendant's son indicated that the defendant had killed the victim and that son was clearly aware of facts which could only have been known by someone who either viewed the body or participated in the crime. Additionally, the appellant was observed placing something which looked like a body wrapped in a sheet in a vehicle. James William Tanner, who was also aware of facts which should have reasonably been known only by a person who had viewed the body or participated in the crime, described how the sheet was used to wrap the body and dispose of it, and actually directed the police to where the sheet was located.

This Court believes that the evidence was sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Consequently, the Court concludes that the appellant's claim that the evidence was insufficient to support the verdict is without merit.

■ Lastly, the appellant claims that the circuit court committed reversible error in failing to grant his motion for a change of venue. In asserting this point, the appellant argues that since there was general knowl-

edge and pre-trial publicity in the Wood County area about his case, it was "probable" that there was prejudice against him which affected his trial.

■ In Syllabus Point 3 of *State v. Derr, supra,* this Court stated: "One of the inquiries on a motion for a change of venue should not be whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant."

While the record shows that the appellant's community had heard about his case, and that several members of the jury had heard of the case, the record also shows that the members of the jury indicated that they could impartially judge the appellant's guilt or innocence. For example, one juror, Kevin Cutright, while indicating that he had heard about the case also stated that he could fairly and impartially listen to the evidence. Another juror, Dwayne Parsons, stated that he had read general newspaper accounts of the crime, but had not formed an opinion in the case. Juror Kevin Wood indicated that he had looked at a newspaper article in the case, but that he would be "totally fair."

Overall, in reviewing the case, the Court cannot conclude that the appellant demonstrated that the jurors had such fixed opinions that they could not judge him impartially.

For the reasons stated, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

Justice McGRAW did not participate in the decision of this case.